UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SPE FO HOLDINGS, LLC                                 CIVIL ACTION

VERSUS                                               NO: 07-3779

RETIF OIL & FUEL, LLC, ET AL                         SECTION: "S" (5)


## ORDER AND REASONS

_____The Motion for Summary Judgment (Doc. #14) filed on behalf of plaintiff SPE FO Holdings,

LLC ("SPE") is GRANTED in part, and DENIED in part as follows:

## BACKGROUND

The pertinent facts are as follows:

Defendant Retif Oil & Fuel, LLC ("Retif") and Hill City Oil Company ("Hill City") are

competitors, both selling fuel to commercial customers.   On May 28, 2004, Hill City was

experiencing financial difficulties, and agreed to sell certain assets to Retif which wanted to enhance

its presence in Houma, Louisiana, where Hill City was also doing business.   On June 2, 2004, and

in exchange for the assets, Hill City received money from Retif, and executed the "Building and

Ownership Restrictions" ("Restrictions").[1]   The Restrictions purport to preclude Hill City from

---

[1]On June 11, 2004, a copy of the Restrictions were recorded in the conveyance records of the Clerk of Court
for the Parish of Terrebonne.

competing with Retif in the sale of fuel at Hill City's Houma location at 1409 Dunn St.

Additionally, the Restrictions state that the Restrictions "run with the land" and are enforceable

solely by Retif.[2]

On October 25, 2004, Hill City filed for Chapter 11 relief in the bankruptcy court, and on

May 12, 2005, the bankruptcy court approved the Plan for Reorganization.  On July 7, 2006, State

Bank & Trust Company, which held the mortgage on the Dunn St. property, transferred the

mortgage, among other things, to Textron Financial Corporation ("Textron").[3]

---

[2]The Restrictions provide in pertinent part:

(1)  LAND USE AND BUILDING TYPE:
      Subject to the terms and conditions hereof, the Property shall not be used for wholesale, commercial lubricant or fuel sales to third-party commercial customers for their personal use and consumption and not for resale to the general public; provided, however, that the foregoing restriction does not apply to the sale or supply of lubricants or fuels to certain Terrebonne Parish governmental entities pursuant to existing contracts between Hill City and such governmental entities.

(2)  TERM:
      These restrictions are to run with the land and shall be binding on all present and future owners, purchasers, and/or lessees of the Property, and all person claiming ownership or possession under under them, from the last date that this act is signed ending May 15, 2014.

(3)  ENFORCEMENT:
      Enforcement of these restrictions are reserved solely to Retif Oil & Fuel, L.L.C., and/or its successor(s) in interest by merger or consolidation ("Retif") and only so long as Retif operates a fuel dock for commercial lubricant and fuel sales in Terrebonne Parish, whether or not such fuel dock is located at the Property, who may bring proceedings at law or in equity against any person, persons, firm, firms, corporation or corporations violating or attempting to violate any of the clauses herein, whether said action be to restrain the violations or to recover damages but not consequential damages.  . . .

[3]In its memorandum, Retif claims without documentary support, that prior to State Bank's transfer of the mortgage to Textron, Retif negotiated with State Bank that State Bank would agree to be bound by the Restrictions and subordinate its mortgage to the Restrictions.  Further, Retif argues that Article 2.1 of the Purchase and Sale Agreement between State Bank and Textron acknowledges the Restrictions; however, a closer reading reveals that the Restrictions are not mentioned specifically.  Article 2.1 provides *in toto*:

      Assumption of Certain Liabilities.  Subject to the terms and conditions of this Agreement, on the Closing Date (as hereinafter defined), Purchaser shall assume and agree to perform and discharge all liabilities and obligations of Seller arising on and after the Closing Date pursuant to the Purchased Loans.  The foregoing liabilities and obligations of Seller being assumed by Purchaser hereunder shall

Textron proceeded with a foreclosure action against the Dunn St. property.  In response to earlier orders from this court relative to writ of seizure and sale, the United States Marshall for the Eastern District of Louisiana advertised the sale of the Dunn St. property.  On December 21, 2006, the United States Marshall sold the Dunn St. property to SPE.  On January 3, 2007, the Order Confirming the Sale was signed.[4]

SPE argues that the document entitled  "Building and Ownership Restrictions" did not impose  a predial servitude that "runs with the land," did not create a building restriction, and did not create a personal contractual obligation as to SPE.  SPE contends that it obtained the Dunn St. Property free of the Restrictions.  Conversely, Retif contends that SPE acquired the property subject to the Restrictions, which constitute a predial servitude.  SPE filed this motion for summary judgment.

## ANALYSIS

### *Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[5]  Although the court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving

---

be collectively referred to as the "Assumed Liabilities" and all other liabilities of any type or nature are specifically excluded and not assumed by Purchaser.

[4]On January 17, 2007, the Marshal's Deed was recorded in the conveyance records of the Clerk of Court for the Parish of Terrebonne.

[5]Fed.R.Civ.P. (56); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55 (1986).

party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.[6]

The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.[7]  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment.[8]  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.[9]  Further, if the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to support its motion, but need only point out the absence of evidence supporting the non-movant's case.[10]

*General Precepts*

Louisiana law recognizes two basic types of obligations: personal and real.  This case concerns whether the Restrictions constitute a personal or real obligation, and, in turn, whether the Restrictions were transferred to a subsequent successor to the Dunn St. property.

A real right in Louisiana attaches to movable or immovable property, and is automatically transferred to a subsequent successor in interest to the property; whereas, the transferability of a personal obligation, in contrast, depends on whether the obligation is classified as heritable or strictly

---

[6]*Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir.1998).

[7]*Id*

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

[9]*Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993).

[10]*Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

4

personal.[11]  Personal obligations may not be enforced by a person who is not in privity with the obligor.[12]

Further, if an obligation is real and affects immovable property, the law of recordation applies, and an interest in immovable property is effective against third persons only if it is recorded.[13]  If the interest is not recorded, it is not effective against a third person <u>even</u> if the third person knows of the claims.[14]  An oft quoted passage of the Supreme Court of Louisiana is instructive:

> The law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. . . .
>
> It is important that the essence of the public records doctrine is that recordation is an essential element for the effectiveness of certain rights, and it is important to distinguish between effectiveness of a right against third persons and knowledge of a right by third persons.  An unrecorded interest is not effective against anyone except the parties.  A recorded interest, is effective both against those third persons who have knowledge and those who do not have knowledge of the presence of the interest in the public records.  From the standpoint of the public records doctrine, knowledge is an irrelevant consideration.  Any theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine.[15]

---

[11]La. Civ. Code arts. 1763-66; A.N. Yiannopoulos, *Louisiana Civil Law Treatise, Property* §§203, 210 (3d ed. 1991)).  *See also Josyln Manufacturing Co. v. Koppers Co.,* 40 F.3d 750, 756-57 (5th Cir. 1994).

[12]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §229 (2001).

[13]*Phillips v. Parker*, 483 So.2d 972, 975 (La. 1986); La. Rev. Stat. 9:2721 and 9:2724.  *See also Camel v. Waller*, 526 So.2d 1086, 1089 (La. 1988).

[14]*Philips*, 483 So.2d at 975.  *See also* La. Rev. Stat. 9:2721 and 9:2724.  *See also Camel,* 526 So.2d at 1089.

[15]*Philips*, 483 So.2d at 975.  *See also, e.g., Camel*, 526 So.2d at 1089-90.

Recordation will not give validity to building restrictions that are otherwise invalid.[16]

The Supreme Court of Louisiana has noted repeatedly that "the law favors the free and unrestricted use of immovable property, and any doubt in the interpretation of documents dealing therewith are resolved in favor of the landowner."[17]

*Predial Servitudes*

A predial servitude is a real right and is defined by the Louisiana Civil Code as a charge on an immovable for the benefit of another immovable belonging to another owner.[18]  More specifically, a predial servitude is "a charge on a servient estate for the benefit of a dominant estate, and requires that the two estates must belong to different owners."[19]   While there are several kinds of predial servitudes, there can be no predial servitude without an identified dominant estate and an identified servient estate.[20]

The word "estate" in article 646 means a distinct corporeal immovable; i.e., a tract of land

---

[16]*See Brier Lake, Inc. v. Jones*, 710 So.2d 1054, 1060 (La. 1998).

[17]*Leonard v. Lavigne*, 162 So.2d 341, 343 (La. 1964).  *See also Clark v. Manuel*, 463 So.2d 1276, 1279 (La. 1985)(restrictive covenants are to be construed strictly and citing with approval, *Munson v. Berdon*, 51 So.2d 157, 162 (La. App. 1st Cir. 1951), wherein restrictive covenant in deed construed against the grantor and person seeking to enforce it, with court stating that all doubts must be resolved in favor of a free use of property and against restrictions.).

[18]3 A.N. Yiannopoulos, *Louisiana Civil Law Treatise: Personal Servitudes* §222 (2000); 4 A.N. Yiannopoulos, *Louisiana Civil Law Treatise: Predial Servitudes* §1 (2004); La. Civ. Code arts. 533 and 645-654.

[19]La. Civ. Code art. 646.

[20]La. Civ. Code art. 646; 2007 Revision Comment (b) to La. Civ. Code art. 646; and, 4 A.N. Yiannopoulos, *Louisiana Civil Law Treatise: Predial Servitudes* §9 (2004).

or a building.[21]  The estate burdened with a predial servitude is designated as "servient"; whereas, the estate in whose favor the servitude is established is designated as "dominant."[22]  If a servitude imposes on an estate in favor of a person rather than of another estate, it is not a predial servitude.[23]  Any doubt as to the existence, extent or manner of exercise of a predial servitude must be resolved in favor of the servient estate.[24]

Predial servitudes are considered derogations of public policy because they form restraints on the free disposal and use of property.[25]  Therefore, predial servitudes are not viewed with favor by the law and can never be sustained by implication.[26]  While a predial servitude must be a benefit

_____

[21]2007 Revision Comment (b) to La. Civ. Code art. 646 and 4 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Predial Servitudes* §7 (2004).  The word "estate" is a translation of "héritage," which the Code Civil reserved exclusively for lands and buildings and stated that only these immovables were capable of being burdened with a predial servitude.  *Id.  See also* La. Civ. Code art. 698 which provides:  Predial servitudes are established on, or for the benefit of distinct corporeal immovables.

[22]2007 Revision Comment (d) to La. Civ. Code art. 646.

[23]2007 Revision Comment (e) to La. Civ. Code art. 646.  As the 2007 Revision Comment (c) to La. Civ. Code art. 646 further explains:

. . . [P]redial servitudes are due to an estate rather than the owner of an estate.  . . .  Therefore, legislative declarations . . . that predial servitudes are due to an estate must be taken as metaphors; they merely mean that predial servitudes are not attached to a particular person but that they are due to anyone who happens to be owner of the dominant estate.

*See also* 4 A.N. Yiannopoulos*, Louisiana Civil Law Treatise:  Predial Servitudes* §9 (2004).

[24]La. Civ. Code art. 730, *F.E. Palomeque v. Prudhomme*, 664 So.2d 88,  93 (La. 1995).  *See also McDuffy v. Weil*, 240 La. 758, 125 So.2d 154, 158 (1960).  According to Professor Yiannopoulos, this rules incorporates into Louisiana law the civilian principle that ownership is presumed to be free of burdens and that any doubt as to a burden must be resolved *in favorem liberatis*.  3 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Personal Servitudes* §227 (2004).

[25]*Palomeque,*  664 So.2d at 93.

[26]*Palomeque*, 664 So.2d at 93; *Buras Ice Factory Inc. v. Dept. of Hwys. of La.*, 235 La. 158, 103 So.3d 74, 80 (1958).

to a dominant estate, the benefit need not exist at the time the servitude is created.[27]  Further, the two estates need not be proximal to one another, but they have to be located "as to allow one to derive some benefit from the charge on the other."[28]  Importantly, a predial servitude is inseparable from the dominant estate and passes with it; the predial servitude continues as a charge on the servient estate when ownership changes.[29]

While the Restrictions in this case state that they are to "run with the land" which is consistent with a predial servitude, the Restrictions lack the bedrock feature of a predial servitude; i.e., the identification of dominant and servient estates or corporeal immovables.  The <u>only</u> corporeal immovable described in the Restrictions is the Dunn St. property, which Retif argues is the servient estate.  In fact, the Dunn St. property is specifically identified by address and legal description.  However, no other corporeal immovable is identified in the document.[30]

Retif argues that the dominant estate is Retif's fuel dock which is located less than a mile away.  Retif contends that it agreed to purchase certain assets of Hill City because the Restrictions contained the noncompetition agreement.  Further, Retif argues that relying on the Restrictions, Retif spent over $ 500,000 on improvements on its fuel dock to increase dock size and tank capacity.

---

[27]La. Civ. Code art. 647.

[28]La. Civ. Code art. 648.

[29]La. Civ. Code art. 650.

[30]*See* n. 2, *infra*.  Retif's reliance upon *R&K Bluebonnet, Inc. v. Patout's of Baton Rouge, Inc*., 521 So.2d 634 (La. App. 3rd Cir. 1988) is not persuasive.  In *R&K Bluebonnet*, the state appellate court found that a predial servitude existed in an act of sale with a provision prohibiting the buyer from operating a seafood restaurant on the property.  *R&K Bluebonnet*, 521 So. 2d 635.  Unlike the facts before this court, the estates at issue were a parent estate and a smaller tract which was being separated and sold from the parent estate; it was clear from those circumstances what and where the dominant estate was.  *R&K Bluebonnet*, 521 So.2d at 635.  That is not the situation in the instant matter.

Nevertheless, the Restrictions only refer to "**a** fuel dock for commercial lubricant and fuel sales in Terrebonne Parish, **whether or not such fuel dock is located at the Property** . . . "[31]  The nonspecific reference to "a" fuel dock somewhere in Terrebonne Parish is insufficient to establish a dominant estate, and therefore no predial servitude was established.  Further, the Restrictions state that the enforcement of the Restrictions is reserved "solely to Retif Oil & Fuel, L.L.C., and/or its successor(s) in interest by merger or consolidation."  The purported restrictions do not favor another estate; they favor Retif, and other juridical persons.  The absence of a dominant estate and enforcement reserved solely to juridical persons rather than in favor of an estate militate against a finding that the Restrictions create a predial servitude.[32]

Because any doubt as to the existence, extent or manner of exercise of a predial servitude must be resolved in favor of the servient estate, the court finds that the Restrictions do not constitute a predial servitude upon the Dunn St. property, and summary judgment is GRANTED.[33]

*Building Restrictions*

Retif argues alternatively that the Restrictions constitute building restrictions.  Though the document is entitled "Building and Ownership Restrictions," the document does not create true building restrictions as defined by the Louisiana Civil Code.

Building restrictions constitute real rights, not personal to the vendor, and inure to the benefit

---

[31]*See* n. 2, *infra* (emphasis added).

[32]La. Civ. Code art. 646.  *See also Sustainable Forests, L.L.C. v. Harrison*, 846 So.2d 1283, 1285 (La. App. 2d Cir. 2003)(no dominant estate described in title instrument; thus, no predial servitude).

[33]La. Civ. Code art. 730, *Palomeque*, 664 So.2d at 93.  *See also McDuffy,* 125 So.2d at 158.

of all other grantees under a general plan of development, and run with the land.[34]  Specifically, building restrictions are charges on immovable property imposed "in pursuance of a general plan governing building standards, specified uses and improvements.  The plan must be feasible and capable of being preserved."[35]  The requirement of a general development plan is an essential feature of building restrictions as *sui generis* real rights.[36]  Unlike predial servitudes, building restrictions may be imposed even in the absence of a dominant estate.[37]  However, "[d]oubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable."[38]

There is no support that the Restrictions were part of a general development plan.  Further, the Restrictions concern a single piece of property and there are no "general plan governing building standards, specified uses and improvements," as required by La. Civ. Code art. 775.  Hence, the court finds that the Restrictions do not create "building restrictions" as defined by the Louisiana Civil Code and GRANTS summary judgment.

---

[34]*Crosby v. Holcomb Trucking, Inc.,* 942 So.2d 471, 475 (La. 2006). *See also Brier Lake,* 710 So.2d at 1058; *Diefenthal v. Longue Vue Management Corp.,* 561 So.2d 44, 51 (La. 1990); La. Civ. Code art. 777; 2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §227 (2001).

[35]*See* La. Civ. Code art. 775; 2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §229 (2001).

[36]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §229 (2001). *See also Brier Lake,* 710 So.2d 1059.

[37]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §229 (2001).

[38]La. Civ. Code art. 783.  Documents establishing building restrictions are subject to strict interpretation and any doubt as the existence of a general plan is resolved in favor of the owner whose property was allegedly restricted. 1977 Revision Comment (b) to La. Civ. Code art. 783 (citations omitted).

*Noncompetition Agreements as Real Rights*

The Restrictions do not establish a real right of a predial servitude or building restrictions that would bind a successor in title.  The issue is whether the Restrictions, which attempt to restrict competition, can affect real rights.  While reasonable restraints on competition may establish personal obligations between the contracting parties,[39] prohibitions against competition may not constitute real rights in Louisiana.[40]

In *Leonard v. Lavigne,* 162 So.2d 341, 343 (La. 1964), the Supreme Court of Louisiana construed the following stipulation in a recorded lease which stated that:

> [lessors bound] themselves, their heirs and assigns not to sell or lease all or part of the adjoining premises owned by them to any other person, firm or corporation for the purposes of engaging in a competitive business with this lessee.[41]

The adjoining premises were subsequently sold by the lessor to the third person without mention of the restriction in the act of sale.[42]  When the new owners started erecting a competitive business on their land, the lessee sought an injunction.[43]  The Supreme Court held that the stipulation did not

---

[39]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §227 (2001).

[40]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §227 (2001).  *See e.g.*, *Leonard*, 162 So.2d 341; *Soho Serve Corp. v. Westowne Association*, 929 F.2d 160 (5th Cir. 1991).  *See also E.P. Dobson v. Perrett*, 566 So.2d 657 (La. App. 2d Cir. 1990)(wherein relying on *Leonard*, the appellate court held that noncompetition agreement contained in recorded lease was not predial servitude or building restriction but only a personal right or obligation of parties to lease and that lessee could not enforce covenant against purchased of property from lessor).

[41]*Leonard*, 162 So.2d at 342.

[42]*Leonard*, 162 So.2d at 343.

[43]*Leonard*, 162 So.2d at 342.

11

create a restriction that ran with the land but rather the clause gave rise to a personal obligation.[44]

The Supreme Court concluded:

> The stipulation in the contract of lease does not create a real
> obligation upon the land itself, but is clearly an obligation the lessors
> placed upon themselves.[45]

As Professor Yiannopolous explains, prohibitions against competition should not be allowed to restrict the use of lands in Louisiana; existing economic needs may be amply satisfied by means of personal obligations.[46]  The *Leonard* case supports this view.[47]

The United States Court of Appeal for the Fifth Circuit, construing Louisiana law, treated the issue similarly when affirming a district court's summary judgment that certain provisions in a lease did not create real rights that were binding on a successor in title.[48]  In *Solo Serve*, a leaseholder of space in a shopping center sued his landlord's successor in title for failing to honor lease provisions when available space was leased to an off track betting facility.[49]  While affirming the \

---

[44]*Leonard*, 162 So.2d at 343.

[45]*Leonard*, 162 So.2d at 343.  *See also Hebert v. Dupaty*, 7 So. 580 (La. 1890)(noncompetition stipulation in lease held to a personal obligation of the lessor and successor in title to lessor was not bound by the stipulation).  The Supreme Court of Louisiana noted that under civil law, real obligations having no exterior sign of their existence can only be established by title.  *Leonard*, 162 So.2d at 342.

[46]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §227 (2001).

[47]*Leonard*, 162 So.2d 341. *See also Hebert*, 7 So. 580; *Wolfe v. North Shreveport Dev. Co.*, 228 So.2d 148 (La. App. 2d Cir 1969), *writ den.*, 229 So. 736 (1970) (noncompete stipulation in recorded lease not a real obligation upon the land); *E.P. Dobson*, 566 So.2d at 657.

[48]*Solo Serve*, 929 F.2d 160.

[49]Specifically, the lease holder argued that by leasing space to the off track betting facility, the successor in title breached the lease provisions which , among other things, prohibited the landlord from conduct "likely to bring discredit upon the Shopping Center"; bound the landlord to a covenant of "quiet enjoyment" of the leased premises; and limited lessors to certain number of parking spaces.  *Solo Serve*, 929 F.2d at 162.

district court's summary judgment in favor of the landlord, the Fifth Circuit disagreed with the district court's finding that the alleged breached lease provisions were restrictive covenants.[50] Construing similar state cases, the Fifth Circuit noted "public policy concerns about the potential anticompetitive effect of such covenants justified a strict construction limiting the scope of such anti-competitor covenants."[51]

In this case, the court must subject the Restrictions to strict construction because they purport to restrict competition.[52]  The Restrictions in this case were recorded and attempt to preclude competition, but were not included in the Marshall's Deed conveying the property to SPE. Recordation of a lease does not create rights that do not exist, nor does recordation make valid restrictions which are not.[53]  Even if the Restrictions had been made part of the Marshall's Deed, the Restrictions do not constitute a predial servitude or a building restriction, as defined by the Louisiana Civil Code.[54]

Accordingly, the court GRANTS summary judgment that the Restrictions do not create a real right as against the Dunn St. property.

---

[50]*Solo Serve*, 929 F.2d at 164.

[51]*Solo Serve, 929* F.2d at 165 (*citing Leonard,* 162 So.2d 341 and *Piggly Wiggly of Mansfield v. Wolpert Associates*, 519 So.2d 371 (La. App. 2d Cir.), *writ denied*, 522 So.2d 1098 (La. 1988)).

[52]*Solo Serve, 929* F.2d at 165; *Leonard,* 162 So.2d 341 and cases cited therein.

[53]*See Brier Lake, Inc.,* 710 So.2d at 1060.

[54]2 A.N. Yiannopoulos, *Louisiana Civil Law Treatise:  Property* §227 (2001).

*Personal Obligation*

While the court finds that the Restrictions did not create a predial servitude, building restriction or other real right against the Dunn St. property, the court nonetheless finds questions of fact which preclude summary judgment as to whether the Restrictions created a personal obligation between Retif and SPE.[55]

SPE argues that if the Restrictions do not define a predial servitude or a building restriction, then the Restrictions create only a personal obligation between Hill City and Retif; that SPE never assumed the contractual obligations imposed on Hill City in the Restrictions; and that SPE was never in privity of contract with Hill City.  SPE argues that as a result, SPE has no personal obligation towards Retif.

Retif argues that prior to the transfer of the mortgage to Textron, State Bank agreed with Retif to be bound by the Restrictions, and that Textron bought the mortgage from State Bank subject to the Restrictions and obligations thereunder.  Retif further argues that SPE is personally bound by the Restrictions because SPE is a "front" for its parent company, Textron.[56]  Retif accepts that SPE is a wholly owned subsidiary of Textron, but states that under a "single business enterprise" theory, the obligation under the Restrictions can extend beyond Textron to SPE.[57]  Under the "single

---

[55]*See Cambias v. Douglas*, 120 So. 369 (La. 1929)(deed binding grantee to erect single residence created personal obligation on grantee and was not binding on subsequent transferee, not parties to the agreement.

[56]Retif also argues that the Bankruptcy Court had no authority to eliminate a predial servitude.  However, the court has concluded that the Restrictions do not qualify as or define a predial servitude, Retif's argument has no merit.

[57]The court notes that the "single business enterprise" theory has not been adopted by the Supreme Court of Louisiana, but has been adopted by all five circuits of the state.  *See Mangano Consultants, Inc. v. Bob Dean Enters, Inc.*, 921 So.2d 1081 (La. App. 5th Cir. 2006), *writ den.*, 927 So.2d 295 (2007); *Dishon v. Ponthie*, 918 So.2d 1132 (La. App. 3d Cir. 2005), *writ den.*, 927 So.2sd 317, 317 (2006); *Miller v. Entergy Services, Inc.*, 913 So.2d 143 (La. App.

enterprise" multifactor test, the subsidiary company can be considered to be the alter ego of the parent.[58]

The court finds that multiple questions of fact exist as the exact relationship between Textron and SPE. Further, these questions of fact impact whether SPE assumed the personal obligation of Textron, if any, when SPE purchased the Dunn St. property. The court DENIES summary judgment as to whether SPE is personally bound by the Restrictions.

IT IS ORDERED that summary judgment be GRANTED in favor of SPE that SPE is not bound by a predial servitude or building restrictions on the Dunn St. property , as per by the Building and Ownership Restrictions document.

IT IS ORDERED that summary judgment is DENIED as to whether SPE is bound by the Building and Ownership Restrictions as a personal obligation from Textron.

---

4th Cir. 2005); *Town of Haynesville, Inc., v. Entergy Corp.*, 840 So.2d 597 (La. App. 2d Cir. 2003), *writ den.*, 845 So.2d 1090 (La. 2004); *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1st Cir. 1991), *writ den.*, 580 So.2d 668 (La. 1992). Furthermore, the United States Fifth Circuit has applied the "single enterprise theory" under Louisiana law. *Rive v. Briggs of Cancun, Inc.*, 82 Fed. Appx. 359 (5th Cir. La. 2003).

The eighteen factors of the "single enterprise theory" are: (1) Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of the corporation; (5) corporation financing another corporation; (6) inadequate capitalization ("thin incorporation"); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations. *Rive,* 82 Fed.Appx. at 367 (*citing Green,* 577 So.2d at 257-58).

[58]*Rive,* 82 Fed. Appx. at 366-67 (*citing Green,* 577 So.2d 249).

New Orleans, Louisiana, this __19th__ day of March, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**