UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SPE FO HOLDINGS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3779** |
| **RETIF OIL & FUEL, LLC, ET AL** | **SECTION: "S" (5)** |

### ORDER AND REASONS

The Reurged Motion for Summary Judgment (Doc. #41) filed by SPE FO Holdings, Inc., is **GRANTED**. The Motion for Reconsideration, or in the Alternative to Alter or Amend Judgment, or in the Alternative, to Direct Entry of Final Judgment and Certify Judgment for Appeal (Doc. # 39) filed by Retif Oil and Fuel, LLC, is **DENIED** as to Fed. R. Civ. Proc. 59(e). The request for certification under Fed. R. Civ. Proc. 54(b) is **MOOT.**

### BACKGROUND

The background facts are recited in the court's Order and Reasons (Doc. #37) of March 19, 2008, and are not repeated here. Additionally, the court notes the following:

On June 2, 2004, Hill City Oil Company and Retif executed the Restrictions which purport to preclude Hill City from competing with Retif at Hill City's Dunn. St. location.[1] State Bank &

---

[1] *See* SPE's memorandum in support of reurged motion for summary judgment (Doc. #41), Ex. 1, Building and Ownership Restrictions.

Trust Company, which held the mortgage on the Dunn St. property, also signed the Restrictions, which state in pertinent part that State Bank "takes cognizance of the . . . restrictions . . . and agrees to be bound thereby, including, without limitation, in the event of a sale of the Property, by foreclosure or otherwise, the foregoing restrictions shall remain in force and effect with respect to the Property."

Subsequently, Hill City filed for Chapter 11 relief in the bankruptcy court, and on May 12, 2005, the bankruptcy court approved the Plan for Reorganization.

State Bank sold its mortgage to Textron Financial Corporation. The Purchase and Sale Agreement does not mention the Restrictions, but states in Article 2.1:

> Assumption of Certain Liabilities. Subject to the terms and conditions of this Agreement, on the Closing Date (as hereinafter defined), [Textron] shall assume and agree to perform and discharge all liabilities and obligations of [State Bank] arising on and after the Closing Date pursuant to the Purchased Loans. The foregoing liabilities and obligations of [State Bank] being assumed by [Textron] hereunder shall be collectively referred to as the "Assumed Liabilities" and all other liabilities of any type or nature are specifically excluded and not assumed by [Textron].[2]

---

[2]*See* SPE's memorandum in support of reurged motion for summary judgment (Doc. #41), Ex. 2, Purchase and Sale Agreement Between State Bank and Textron, Article 2.1, at 3. Article 1.1(I) of the Purchase and Sale Agreement further provides that State Bank agrees to:

> sell, transfer, convey, assign and deliver to [Textron], and [Textron] agrees to purchase from [State Bank] free and clear of all claims and encumbrances, all of [State Bank's] right, title and interest in, . . . as hereinafter defined:
>
> (I) all loans, security deposits, all security for and guaranties of the payment of the foregoing, and all documents and instruments related to the foregoing (including but not limited to, promissory notes, security agreements, loan agreements, mortgages, deeds of trust, schedules, collateral security agreements or addenda, letter of credit agreements, letters of credit, guarantees, bills of sale, evidence of insurance, life insurance and title insurance policies,

Textron initiated foreclosure proceedings which Hill City opposed. Textron and Hill City entered into an agreement which provided that Hill City would withdraw its opposition and allow Textron to proceed with the foreclosure action, if Textron would allow Hill City to lease the Dunn St. property, provided that Textron or one of its affiliates was the successful bidder at the resulting judicial sale to be conducted by the U.S. Marshal.[3]

It is undisputed that Retif's counsel advised Textron of the existence of the Restrictions prior to the sale by the United States Marshal of the Dunn St. property to SPE, a wholly owned subsidiary of Textron.[4] The Order Confirming the Sale was signed, and the Marshal's Deed was recorded in the conveyance records of the Clerk of Court for the Parish of Terrebonne.

SPE filed suit against Retif, seeking a declaration that the Restrictions did not create a predial servitude or any other restrictions that would be binding on SPE and enforceable by Retif, and that SPE acquired the Dunn St. property free and clear of any claims or encumbrances, including those contained in the Restrictions.

---

ownership interests, make-well agreements, financing statements, certificates of title, cross-default and/or cross-collateral agreements, assignment documents and any other agreements or instruments providing security for, relating to or affecting the foregoing loan transactions), and all rights appurtenant to the foregoing, as well as all unpaid amounts owed or owing, whether now existing or hereafter arising, to [State Bank] by the obligors in respect of such loan or other finance transactions as further identified by obligor and number . . . (collectively, the "Purchased Loans") . . .

[3] *See* Retif's memorandum in opposition to motion for summary judgment (Doc. #22), Ex. 8, Settlement Term Sheet, at 2 and 4.

[4] *See* Retif's memorandum in opposition to reurged motion for summary judgment (Doc. #43), Ex. 2, Affidavit of Kenneth J. Retif.

SPE moved for summary judgment which this court granted in part and denied in part in its Order and Reasons of March 19, 2008 (Doc. #37). The court found that the "Building and Ownership Restrictions" did not create a predial servitude, building restriction or other real right against the Dunn St. property. However, the court found questions of fact that precluded summary judgment as to whether the Restrictions created a personal obligation between Retif and SPE, through SPE's relationship with Textron. Specifically, the court found although SPE was a wholly owned subsidiary of Textron, questions of fact existed whether, under a "single business enterprise" theory, a personal obligation under the restrictions extended beyond Textron to SPE. SPE reurges its motion for summary judgment, arguing that summary judgment is proper because Textron assumed no personal obligation of State Bank when it purchased the mortgage and, as a result, no personal obligation existed to transfer to SPE, regardless of the determination of a single enterprise issue.

## ANALYSIS

**A.   SPE's Reurged Motion for Summary Judgment**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[5]  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[6]

---

[5] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[6] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

SPE argues, for purposes of its reurged motion, that even if SPE and Textron were considered a single business enterprise, SPE is entitled to summary judgment that SPE owes no personal obligation to Retif because the Purchase and Sale Agreement between State Bank and Textron did not transfer the personal obligation State Bank owed to Retif.  Earlier, the court has determined that the Restrictions did not create real rights that ran with the land.  Thus, the issue before the court is whether the Purchase and Sale Agreement between State Bank and Textron resulted in Textron's assumption of State Bank's personal obligations to Retif as to the Restrictions.

Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court.[7]  However, where there is a choice of reasonable interpretations of a contract, an issue of material fact concerning the parties' intent precludes summary judgment.[8]

According to Retif, the language of the Purchase and Sale Agreement between State Bank and Textron is broad enough to evidence Textron's assumption of State Bank's obligations as to the Restrictions:  (1) because Textron agreed to "assume and agree to perform and discharge all liabilities and obligations of [State Bank] arising on and after the Closing Date pursuant to the Purchased Loans,"; (2) because "Purchased Loans" includes "all loans, security deposits, all security for and guaranties of the payment of the foregoing, and all documents and instrument relating to the foregoing"; and (3) because Textron and SPE were aware of the Restrictions when Textron purchased the mortgage on the Dunn St. property.

---

[7]*Amoco Prod. Co. v. Texas Meridian Resources Expl., Inc.*, 180 F.3d 664, 668 (5th Cir. 1999).

[8]*Id.* at 668.

Louisiana Civil Code article 1821 governs the assumption of obligations and provides:

> An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the obligee against a third person, the agreement must be made in writing.

As the Fifth Circuit noted in construing La. Civ. Code art. 1821, "'[t]he jurisprudence is well settled that personal obligations must be expressly assumed.'"[9] Such an assumption must be "apparent from the face" of the document.[10] A third person may be bound to a personal obligation only if he agrees expressly to assume the obligation.[11]

The Purchase and Sale Agreement between Textron and State Bank is silent with regard to the Restrictions. Though the Purchase and Sale Agreement is broadly worded, it is not specific enough that it is apparent from its face that Textron assumed State Bank's obligations under the Restrictions. Additionally, the language, "arising on or after the closing date," would exclude the subject obligation. Because such an assumption is not "apparent from the face" of the Purchase and Sale Agreement, the court holds as a matter of law that Textron did not assume State Bank's personal obligation to Retif under the Restrictions.[12]

The court **GRANTS** the reurged motion for summary judgment.

---

[9] *Chevron USA, Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1149 (5th Cir. 1993)(*quoting Tall Timbers Owners' Ass'n v. Merritt*, 376 So.2d 586, 588 (La. App. 4th Cir. 1979)). *See also Pinnacle Operating Co. v. Ettco Enterprises, Inc.*, 914 So.2d 1144, 1149 (La. App. 2nd Cir. 2005).

[10] *Chevron USA, Inc.,* 987 F.2d at 1159. In *Chevron*, the Fifth Circuit declined to read into broadly worded subleases an express assumption of personal obligations, "where no such assumption was apparent from the face of the documents." *Chevron USA,* 987 F.2d at 1159. *See also Pinnacle Operating Co.,* 914 So.2d at 1149.

[11] *Pinnacle Operating Co.,* 914 So.2d at 1149 ("the intent to assume the obligation must be clearly expressed on the face of the documents.").

[12] *Chevron USA,* 987 F.2d at 1149 and 1159; *Pinnacle Operating Co.,* 914 So.2d at 1149.

6

**B.     Retif's Motion to Reconsider under Rule 59(e), and Alternatively, for Rule 54(b) Certification**

Retif moves this court to reconsider its finding that the Restrictions did not create a predial servitude or another real right upon the Dunn St. property. Specifically, Retif disagrees with this court's application of Louisiana law on predial servitudes. Retif offers no new argument and only reurges its initial position. Alternatively, Retif argues that should this court not reconsider its prior order, the court should certify its order as a 54(b) judgment for the purposes of appeal.

*1. Rule 59(e)*

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment."[13] The court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under Rule 59(e).[14] "Rule 59(e) is properly invoked to correct a manifest error of law or fact or to present newly discovered evidence."[15] "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction."[16]

Retif argues that Louisiana law only requires that the dominant estate be "reasonably identified," and that although the Restrictions lack a legal description or physical address, the Restrictions contain a sufficient description of a dominant estate.

---

[13]*In Re TransTexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir. 2002).

[14]*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990).

[15]*In re TransTexas Gas Corp.*, 303 F.3d at 581 (internal quotation and citation omitted).

[16]*In Re Self*, 172 F. Supp.2d 813, 816 (W.D. La. 2001).

The Restrictions only refer to "**a** fuel dock for commercial lubricant and fuel sales in Terrebonne Parish, **whether or not such fuel dock is located at the Property** . . ."[17] The nonspecific reference to "a" fuel dock somewhere in Terrebonne Parish in insufficient to establish a dominant estate.  Further, any doubt as to the existence, extent or manner of exercise of a predial servitude must be resolved in favor of the servient estate.[18]

Retif has not demonstrated a manifest error of law or of fact, or presented newly discovered evidence to support a Rule 59(e) motion.  Accordingly, the Rule 59(e) motion is **DENIED.**

*2. Rule 54(b)*

Because SPE's reurged motion for summary judgment has been granted, Retif's motion for certification under Fed. R. Civ. Proc. Rule 54(b) is **MOOT.**


New Orleans, Louisiana, this   6th   day of August, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[17]*See* Order and Reasons (Doc. #37), at 2 n.2 and 9 (emphasis added).

[18]*See* Order and Reasons (Doc. #37), at 7 and n. 24.